UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| MICHAEL BRONSON,<br>Plaintiff,<br><br>v.<br><br>TOWN OF SOUTH KINGSTOWN *by and through its Treasurer/Finance Director* ZACHARY SAUL; ROBERT C. ZARNETSKE *and his successors solely in their capacity as Town Manager of the Town of South Kingstown;* AIMEE REINER *and her successors solely in their capacity as Director of Administrative Services of the Town of South Kingstown;* and JOHN DOE DEFENDANTS 1-5,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 1:22-cv-65-JJM-LDA |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Sergeant Michael Bronson has alleged against the Defendants negligent infliction of emotional distress (NIED), and violations of: (1) the Fourteenth Amendment's guarantee of substantive due process; (2) the Rhode Island Civil Rights Act ("RICRA"), and (3) the Rhode Island Whistleblower's Protection Act ("RIWPA"). ECF No. 4 at 7-17. These claims arise from events that occurred during Sgt. Bronson's employment with the South Kingstown Police Department ("SKPD"). Following discovery, the Defendants moved for summary judgment. ECF No. 23. For

the reasons stated below, the Court GRANTS the Defendants Motion for Summary Judgment on all counts (Counts I-IV).

## I.    BACKGROUND

Sgt. Bronson has been working as a police officer at SKPD since 2007.  The events that give rise to this suit began around August 2018, after Sgt. Bronson was promoted from patrol officer to sergeant and began working the third shift.  ECF No 28 at 2.  On some of these shifts, Sgt. Bronson worked under the supervision of Lieutenant Scott Orton.  *Id.* at 2-3.  While working these shifts, Sgt. Bronson noticed behavior from Lt. Orton that concerned him.  Sgt. Bronson noted that Lt. Orton was: (1) often late for his shifts; (2) difficult to get in contact with; (3) reporting to calls in his personal vehicle and in civilian clothes; (4) speaking angrily when responding to Sgt. Bronson's calls; and (5) engaging in inappropriate behavior with a young female dispatcher.  *See id.* at 3-4.

In January 2019, after Captain Alfred Bucco inquired about how the third shift was going, Sgt. Bronson sat down with him to verbally report the behavior he observed from Lt. Orton.  ECF No. 24 a. 2.  In response, Capt. Bucco said that he would "take care of Lt. Orton"—though Sgt. Bronson never found out if Capt. Bucco ever did or said anything to Lt. Orton following the meeting.  *Id.*  Within the month of Sgt. Bronson's verbal report, Lt. Orton angrily confronted Sgt. Bronson at roll call, drawing and pointing a load firearm directly at him.  ECF No. 28 at 4.  While pointing the weapon, Lt. Orton walked toward Sgt. Bronson and stated, "I should fucking kick your ass." *Id.*  Sgt. Bronson did not immediately report the incident, fearing that Lt.

2

Orton would retaliate against him. *Id.* Instead, Sgt. Bronson chose to take time off or rearrange his schedule to avoid working with Lt. Orton. *Id.* at 4-5. In any event, Sgt. Bronson continued to note Lt. Orton's problematic behavior. *Id.* at 5.

In July 2019, Sgt. Bronson reported his concerns with Lt. Orton to Lieutenant Montafix Houghton. *Id.* Lt. Houghton then brought these concerns to the attention of Captains Joel Ewing-Chow, Bucco, and Healy. ECF No. 24 at 2. Capt. Ewing-Chow told Lt. Houghton to instruct Sgt. Bronson to prepare a memorandum regarding the concerning behavior he observed from Lt. Orton. *Id.* Sgt. Bronson promptly submitted a report detailing the roll call incident, the alleged sexual harassment toward the female dispatcher, an incident in which Lt. Orton was seen with his foot on the head of a motorist, and several other incidents. ECF No. 28 at 5. Meanwhile, Capt. Ewing-Chow relayed Sgt. Bronson's complaints to Chief Joseph Geaber, recommending that Lt. Orton be placed on paid administrative leave pending an internal investigation. ECF No. 24 at 3. Chief Geaber agreed, placing Lt. Orton on such a leave pending the ensuing internal investigation. *Id.*

Because of the investigation, it was determined that Lt. Orton violated several of SKPD's rules, regulations, policies, and procedures. Consequently, Chief Geabar ordered Lt. Orton to submit to a fitness for duty evaluation, placing him on sick leave pending the evaluation's result. *Id.* Ultimately, Lt. Orton was determined fit for duty and permitted to return to full duty on Thanksgiving 2019. *Id.* However, Lt. Orton's return to duty did not last long, as he was again placed on administrative pending an internal investigation arising from a dispatcher's allegations that Lt. Orton sexually

harassed her during a period predating Lt. Orton's first administrative leave. *Id.* Amid that investigation, Lt. Orton resigned from SKPD effective December 31, 2019. ECF No. 24 at 4. Sgt. Bronson continued working as an SKPD officer until August 2020, when he was placed on leave after submitting a letter from his physician indicating that he was unfit for duty due to work related stress. *Id.* He is currently receiving injured on duty ("IOD") benefits for conditions arising from such work related stress.

## II.    STANDARD OF REVIEW

The purpose of summary judgment is to "pierce the boilerplate of the pleadings." *Quinn v. City of Bos.*, 325 F.3d 18, 28 (1st Cir. 2003). Taking the evidence in the light most favorable to the nonmoving party, the Court must grant summary judgment if the moving party can show that "no genuine dispute as to any material fact," and they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A dispute is "genuine" if a reasonable jury could resolve it for the nonmoving party. *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994). A fact is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Additionally, the moving party must have a right to judgment as a matter of law, which can be established if the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is a "drastic remedy" because it deprives the parties of their Seventh Amendment right

to have their case tried by a jury. *Colman v. Faucher*, 128 F. Supp. 3d 487, 490 (D.R.I. 2015). It also serves as an important check on the parties: the nonmovant may not rely on "conclusory allegations, improbable inferences, acrimonious invective, or rank speculation," but must produce "specific facts" to support their claims or defenses. *Theidon v. Harvard Univ.*, 948 F.3d 477, 494 (1st Cir. 2020) (citations and internal quotation marks omitted).

## III.    DISCUSSION

### A.    RIWPA Claims

#### 1. Whether Defendants Zarnetske and Reiner are Considered "Employers" under the RIWPA.

The Defendants argue that Sgt. Bronson cannot assert the RIWPA claims against Defendants Aimee Reiner (Director of Administrative Services) and Robert Zarnetske (Town Manager), and their successors, because they do not fall under the Act's definition of "employer." ECF No. 24 at 5. To support this argument, the Defendants outline the RIWPA's language that provides that:

> [a]n *employer* shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment . . . [b]ecause the employee reports verbally or in writing to the employer or to the employee's supervisor a violation . . . of a law or regulation or rule promulgated under the laws of this state, a political division of this state, or the United States . . ..

R.I. Gen. Laws § 28-50-3 (emphasis added). The Defendants go on to highlight the RIWPA's definition of employer, which states "[o]ne shall employ another if services are performed for wages or under any contract of hire, written or oral, express or implied." R.I. Gen. Laws § 28-50-2(2). Considering these statutory provisions, the

Defendants assert that Sgt. Bronson had an employment contract with the Town of South Kingstown ("South Kingstown")—not with Mr. Zarnetske or Director Reiner. ECF No. 24 at 5. Thus, the Defendants contend that South Kingstown is Sgt. Bronson's employer and therefore any RIWPA claim Sgt. Bronson has must be brought against South Kingstown. *Id.*

The Court has addressed an argument like that of the Defendants in *Casey v. Manni*, 449 F. Supp. 3d 1 (D.R.I. 2020). In *Casey*, the plaintiff, a Rhode Island State Police officer, sued his supervisors and the Superintendent of the State Police under the RIWPA for alleged retaliation. *Id.* at 1. The defendants sought dismissal of the RIWPA claim, in part, because the plaintiff did not sue his "employer"—the Rhode Island State Police—as required under the Act. However, the Court denied the motion, reasoning that the plaintiff correctly noted that he was suing the Superintendent and his supervisors "in their official capacity and therefore the real party in interest is the government entity, his employer, not the named officers." *Id.* at 4 (citing *Lewis v. Clarke*, 581 U.S. 155, 162, (2017)).

Here, Sgt. Bronson is suing Defendants Reiner and Zarnetske in their official capacities as South Kingstown's Director of Administrative Services and Town Manager, respectively. Thus, the real party in interest is South Kingstown, Sgt. Bronson's employer, not the named employees. *See id; see also Lewis*, 581 U.S. at 162 ("In an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself."). So, Sgt.

Bronson can assert these RIWPA claims against Defendants Reiner and Zarnetske in their official capacities.

### 2. Whether the Defendants Retaliated Against Sgt. Bronson in Violation of the RIWPA.

Sgt. Bronson asserts that the Defendants retaliated against him, in violation of the RIWPA, after he reported Lt. Orton's alleged misconduct. To succeed on a retaliation claim, a plaintiff must prove that "(1) she engaged in protected activity; (2) she suffered some materially adverse action; and (3) the adverse action was causally linked to her protected activity."[1] *Stratton v. Bentley Univ.,* 113 F.4th 25, 41–42 (quoting *Dixon v. Int'l Bhd. of Police Officers*, 504 F.3d 73, 81 (1st Cir. 2007)). The Supreme Court has held that this is a "but-for" test. *Carvalho v. Santander Bank, N.A.,* 573 F. Supp. 3d 632, 645 (D.R.I. 2021) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)) ("a plaintiff making a retaliation claim . . . must establish that his or her protected activity was a but-for cause of the alleged adverse action.").

The three-part burden-shifting framework found in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) applies to retaliation claims, meaning that upon the plaintiff making a prima facie case of retaliation, the burden shifts to the defendant to provide a genuine "non-retaliatory reason for its employment decision." *Stratton,* 113 F.4th at 42 (quoting *Abril-Rivera v. Johnson,* 806 F.3d 599, 608 n.10 (1st Cir.

---

[1] Both RICRA and RIWPA require plaintiffs to prove the same three elements for their retaliation claim, which are borrowed from the standards applicable to Title VII suits. *See Ryder v. Pearson Educ., Inc.*, 486 F. Supp. 3d 489, 509 (D.R.I. 2020).

2015)). If the defendant meets their burden, then the burden shifts back to the plaintiff to prove that the defendant's reason is pretext and "that retaliatory animus was the real motivating factor." *Id.* (quoting *Abril-Rivera*, 806 F.3d at 608 n.10). Pretext may be shown based on "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions," or where the reason is simply "unworthy of credence." *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 168 (1st Cir. 1998).

As to the first retaliation element, the parties do no dispute that Sgt. Bronson's formal report of Lt. Orton's conduct was protected activity under the RIWPA.[2] That said, the parties contest whether Sgt. Bronson's earlier verbal complaints to Capt. Bucco about Lt. Orton's behavior constituted protected activity. In essence, the RIWPA defines protected conduct as when an employee reports "verbally or in writing . . . to the employee's supervisor a violation, which the employee knows or reasonably believes has occurred . . ., of a law or regulation or rule promulgated under the laws of this state . . . or the United States." R.I. Gen. Laws § 28-50-3(4). A plaintiff does not have to show that the conduct he challenges was in fact unlawful but "he must demonstrate 'a good faith, reasonable belief that the underlying conduct violated the law.'" *Johnston v. Urb. League of Rhode Island, Inc.*, No. CA 09-167S, 2011 WL

---

[2] Beyond the parties' concessions, Sgt. Bronson's July 2019 report was protected activity under the RIWPA. In relevant part, Sgt. Bronson's report explicitly alleged that Lt. Orton pointed a firearm at him. ECF 24-2 at 6. And in connection with this report, Sgt. Bronson expressed that he "did not wish to pursue any criminal charges against Lieutenant Orton." *Id.* at 8. Thus, the record establishes that Sgt. Bronson had a good-faith, reasonable belief that Lt. Orton's conduct violated the law—rendering his report of the firearm incident protected activity under the RIWPA.

2297655, at *6 (D.R.I. May 17, 2011) (quoting *Moberly v. Midcontinent Commc'n*, 711 F. Supp. 2d 1028, 1044 (D.S.D. 2010)).  Under this standard, the plaintiff's burden "has both a subjective and an objective component," meaning the plaintiff must have a subjective good-faith belief that their employer engaged in an unlawful employment practice *and* his belief must be objectively reasonable when considering the presented record and facts. *Id.* (citing *Murphy v. City of Aventura*, 616 F. Supp. 2d 1267, 1282 (S.D. Fla. 2009)).

Here, the Defendants recite Sgt. Bronson's testimony about his conversation with Capt. Bucco, contending that he merely reported that: (1) Lt. Orton spoke "to him angrily when [he] contacted him by cell phone . . ..."; (2) Lt. Orton was "being inappropriate with a young female dispatcher by getting close to the side of her face and saying hi . . .." (3) Lt. Orton was often tardy and unreachable; (4) "Lt. Orton was not taking his medication." *Id.* at 2-3.  The Defendants argue that Sgt. Bronson has failed to explain how any of these circumstances he reported to Capt. Bucco constated conduct that "violated any state or federal employment laws." ECF No. 32 at 3.  On the other hand, Sgt. Bronson contends that he reasonably believed that Lt. Orton's above conduct violated either a law, rule, or regulation. *See* ECF No. 28 at 12.

Even when drawing all reasonable inferences in his favor, there is not sufficient evidence that Sgt. Bronson had a good-faith subjective belief that the conduct he reported to Capt. Bucco violated any state or local laws or regulations. Sgt. Bronson himself described the issues he reported to Capt. Bucco as "minor up to this point." ECF No 24-2 at 2.  Such a characterization of these issues uncut any

inference that Sgt. Bronson' subjectively believed that Lt. Orton's conduct was unlawful. Further, Sgt. Bronson explained in his deposition that his concerns about Lt. Orton being tardy and unreachable were rooted in the morale issues that conduct could cause—noting that "patrolmen and supervisors were all complaining." ECF No. 24-1 at 7. Moreover, Sgt. Bronson does not provide this Court with any meaningful discussion or analysis on how Lt. Orton angrily speaking with him on the phone amounted to unlawful conduct.[3] *See Nissensohn v. CharterCARE Home Health Servs.*, 306 A.3d 1026, 1035 (R.I. 2024) (holding that the plaintiff failed to produce evidence that he engaged in protected conduct, in part, because he failed to explain how his supervisor's "anger issues" violated any state or federal employment laws). Nor does he provide any meaningful discussion or analysis on how Lt. Orton saying "hi" near a female dispatcher's face violated any local, state, or federal laws or regulations.

But to qualify as protected whistleblower conduct, "the whistleblower must know, or believe, that the employer engaged in conduct beyond what the employee finds worthy of criticism or requiring correction" because "the subject of the whistleblowing must amount to a violation of an identified federal, state or local law or regulation." *Chagnon v. Lifespan Corp.*, No. CV 15-493S, 2017 WL 3278952, at *7 (D.R.I. June 19, 2017), adopted, 2017 WL 3278858 (D.R.I. Aug. 1, 2017) (citation omitted). Here, the record may permit a reasonable jury to infer that the conduct

---

[3] Sgt. Bronson's concerns about Lt. Orton's alleged failure to take medication were that he believed it was one of the causes of Lt. Orton's "personality change" from a "silly lieutenant" to an "angrier" person ECF No. 24-1 at 5.

Sgt. Bronson reported to Capt. Bucco was unprofessional behavior that he believed required correction. But Sgt. Bronson does not identify any law or regulation that he subjectively believed Lt. Orton's conduct violated. Did he believe that the conduct amounted to illegal workplace discrimination, a hostile work environment, illegal retaliation, etc.? The answer is unclear because Sgt. Bronson makes only conclusive assertions that Lt. Orton's conduct violated a law or regulation. *See* ECF No 28 at 11 ("Sgt. Bronson reasonably believed that Lt. Orton's conduct constituted violations of laws, rules or regulations in the State of Rhode Island."); *see id* ("[The] incidents involving Lt. Orton's inappropriate behavior towards a young dispatcher . . . is unquestionably a violation of a law and/or regulation. . ..").

Consequently, it is unclear how a reasonable jury could infer that Sgt. Bronson subjectively believed that Lt. Orton's conduct violated any law or regulation when Sgt. Bronson has not even articulated which laws he believed were violated. So, Sgt. Bronson has not set forth sufficient evidence that he engaged in protected conduct under the RIWPA when he reported Lt. Orton's conduct to Capt. Bucco in January 2019. Having determined that Sgt. Bronson did not engage in protected conduct until his formal report against Lt. Orton in July 2019, the Court need not address the alleged materially adverse actions that occurred before that report.[4]

---

[4] Sgt. Bronson alleged that in retaliation for his verbal report to Capt. Bucco, he: (1) received a "poor" performance evaluation from Lt. Orton in February 2019, and (2) was denied, in May 2019, the new traffic sergeant position he applied for. ECF No. 28 at 6.

Now, the Court turns to whether the Defendants subjected Sgt. Bronson to a materially adverse action after he submitted the July 2019 protected report. To establish an adverse employment action, a plaintiff must show that her employer engaged in a "materially adverse" action—an action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Stratton*, 113 F.4th at 43 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). This standard is objective, and therefore an "employee's subjective reaction to the claimed act of retaliation is not determinative." *Lima v. City of E. Providence*, 17 F.4th 202, 209 (1st Cir. 2021) (citing *Burlington*, 548 U.S. at 68-69). To be material, a retaliatory action must cause significant, rather than trivial, harm. *Burlington*, 548 U.S. at 68. Generally, "petty slights, minor annoyances, and simple lack of good manners" are not materially adverse actions. *See id.* The Court will address each of Sgt. Bronson's assertions of retaliatory acts in turn.

### a. Denial of Training Request.

The first materially adverse action Sgt. Bronson outlines occurred in October 2019, when the Defendants purportedly denied his application to attend a Use of Force training without explanation. ECF No. 28 at 12; *see also* ECF No. 32-3. The Defendants concede that they denied his attendance request but contend that there was an explanation provided for the denial. ECF No. 32 at 5. The Defendants supply a completed copy of Sgt. Bronson's Training Authorization Request form, highlighting the comments explaining the reasons for denying his request, which stated, "This is

our range week.  Staffing concerns are of concern.  This should be explored in the future."  *Id.; see also* ECF No. 32-3.

While the record does refute Sgt. Bronson's assertion that he received no explanation for the denial of his training request, the essential issue here is whether such a denial constituted a materially adverse action.  Here, Sgt. Bronson has not shown that he suffered any material harm stemming from the denial of his training request.  While it may have disappointed Sgt. Bronson to have his request denied, he has not proffered evidence that the denial rose above a trivial harm.  What could have established the denial's materiality would be evidence suggesting that the Use of Force training would have contributed "significantly to [Sgt. Bronson's] professional advancement" such that the denial of such training "might well deter a reasonable employee from complaining about discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69, (2006).  But Sgt. Bronson falls short on illustrating the denied training request caused significant harm—inhibiting a reasonable jury from inferring that the denial constituted a materially adverse employment action.[5]

### b.  Initial Denials of IOD Benefits.

Next, Sgt. Bronson asserts that Defendants subjected him to an adverse employment action because they purportedly wrongfully denied him IOD benefits for over a year.  *See* ECF No. 13-14.  In this claim, Sgt. Bronson implicates Defendant Reiner as being directly involved in denying his IOD requests.  *Id.* at 14.  Sgt. Bronson

---

[5] Even if Sgt. Bronson could create an inference of retaliation based on his denial training request, he has no proffered evidence that the Defendants' explanation for denying his request was pretextual.

explains that he made two IOD requests—one in December 2019 and one in February 2020—noting that each time he filed the correct paperwork. *Id.* at 14, 16. He notes that in the deposition of Aimee Campbell, she testified that the Town denied his December 2019 request because Dr. Amad's note "did not specify that the injury was work related or provide any details surrounding it." *Id.* at 14. Sgt. Bronson argues that Dr. Amad's note, which he purportedly submitted with his IOD request, directly contradicts South Kingstown's reasoning for denying his December 2019 IOD request because the note stated that his stress symptoms were related to workplace stressors. *Id.*

A review of the record reveals a glaring temporal issue with Sgt. Bronson's arguments. The physician's note that Sgt. Bronson cites to as contradicting the Town's reasoning for denying his December 2019 IOD request is dated on February 26, 2020. ECF No. 28-9. And the full sentence from Ms. Campbell's deposition testimony states "[t]he *initial* paperwork provided by [Dr. Amad] did not specify that it was work related or have details surrounding that." ECF No. 28-6 at 11 (emphasis added). Further, Sgt. Bronson himself states that his February 2020 IOD request "included a note from his physician that made clear the Plaintiff's diagnosis was a result of . . . ongoing harassing conduct by superiors." ECF No. 28 at 12. Taken together, the evidence reflects that Sgt. Bronson submitted Dr. Amad's note with his February 2020 IOD request—not the December 2019 request.[6] Thus,

_____

[6] Sgt. Bronson has not provided any timeline as to when the Defendants denied his initial IOD request. Even so, it would be improbable to infer that Sgt. Bronson submitted the February 26, 2020 note from Dr. Amad to support his December 2019

14

his arguments that Dr. Amad's note contradicted the Town's decision to deny December 2019 IOD request are unmoving because the note post-dates that request by several months and was apparently submitted only with Sgt. Bronson's second IOD request. Accordingly, Sgt. Bronson has failed to set forth sufficient evidence for a jury to conclude the denial of his IOD benefits was an adverse employment action because nothing suggests that such a decision was wrongful.[7]

### c. Reprimand For Belated Report of the Firearm Incident.

Sgt. Bronson's next claim is that he was the only officer reprimanded for failing to timely report Lt. Orton pointing a firearm at him, despite several other officers failing to promptly report the incident. ECF No. 28 at 12. He asserts that Capt. Bucco amended Sgt. Bronson's March 2020 annual performance evaluation—five months after it was originally issued—to reprimand him for waiting six months to report the firearm incident. *Id.* at 7. The Defendants argue that the Capt. Bucco's appended comments did not constitute an adverse employment action because the evaluation "in no way affected his compensation, benefits or responsibilities." ECF

---

IOD request, rather than his February 2020 IOD request. *See Theidon v. Harvard Univ.*, 948 F.3d 477, 494 (1st Cir. 2020) (noting that at the summary judgment stage, the nonmovant may not rely on "improbable inferences" but must produce "specific facts" to support their claims or defenses).

[7] This is not to say that an action must be "wrongful" to constitute a materially adverse action. However, Sgt. Bronson's arguments imply that what made the denial of his IOD benefits materially adverse was that the decision purportedly contradicted Dr. Amad's note. His theory appears to be that a baseless or contradictory denial of benefits is a material harm that may dissuade a reasonable worker from engaging in protected activity—i.e., a materially adverse action. But as the Court explained, Sgt. Bronson fails to show how South Kingstown's disposition of his December 2019 IOD request contradicted any *existing* evidence at that time.

No. 24 at 8. Further, the Defendants emphasize that Capt. Bucco comments would not deter a reasonable employee from making a report like Sgt. Bronson's, but would encourage employees to submit timelier reports. *Id.* at 8-9.

Generally, a reprimand does not rise to the level of a materially adverse action if it does not carry with it any tangible consequences. *Bhatti v. Trustees of Bos. Univ.*, 659 F.3d 64, 73 (1st Cir. 2011). Here, Sgt. Bronson does not point to any tangible consequences that flowed from Capt. Bucco's comments outlining his untimely report of the firearm incident. He merely takes issue with the fact that other officer's present during the incident purportedly did not receive any reprimand for the incidents. However, Sgt Bronson does not put forth sufficient evidence to support these otherwise conclusory and speculative allegations of disparate treatment. The dearth of tangible consequences stemming from Capt. Bucco's comments preclude a reasonable jury from inferring that such comments constituted an adverse employment action.

### d. Verbal Reprimand for Procedure Noncompliance

Next, Sgt. Bronson argues that the Defendants retaliated against when SKPD Chief Joseph Geabar issued him verbal reprimand, purporting that he was not responsible for the mishap underlying the reprimand. The reprimand arose from an incident in which Sgt. Bronson was the officer in charge (OIC) of the shift, during which a dispatcher did not follow COVID-19 protocols—leading to officers not being notified that there were responding to a COVID-19 positive residence. ECF No. 24-7. Consequently, Chief Geabar issued Sgt. Bronson a verbal reprimand, explaining

that as OIC, Sgt. Bronson was responsible for ensuring that the dispatcher followed established COVID-19 protocols and relayed necessary information to responding officers. *Id.* Sgt. Bronson appears to assert that this reprimand was unwarranted, contending that he was "singled out and disciplined for a dispatcher's mistake that he had no knowledge of, no control over, and no meaningful opportunity to prevent." ECF No. 28 at 12.    But even assuming that Chief Geabar's reprimand was unwarranted, his criticisms of Sgt. Bronson's work performance carried with it no tangible consequences.  Therefore, the verbal reprimand was not materially adverse and thus not actionable. *See Bhatti v. Trustees of Bos. Univ.*, 659 F.3d 64, 73 (1st Cir. 2011) (holding that employer's written reprimand, even if undeserved, was "not materially adverse and therefore not actionable" because there were no tangible consequences from the reprimand).

### e. South Kingstown's Failure to Investigate Sgt. Bronson's July 2019 Report.

Lastly, Sgt. Bronson argues that Defendants Zarnetske and Reiner are implicated in the purported adverse employment actions he suffered because they did not conduct a meaningful investigation into his allegations against Lt. Orton.  ECF No. 28 at 13.  He contends that Mr. Zarnetske and Director Reiner were first made aware of SKPD's internal investigation into Sgt. Bronson's claims against Lt. Orton in December 2019, when investigating a female dispatcher's complaints against Lt. Orton.  *Id.* He argues that despite notice of his claims, Mr. Zarnetske and Director Reiner never investigated them to discern if either SKPD or South Kingstown's Harassment Policy were violated.  *Id.*   Sgt. Bronson asserts South Kingstown's

Harassment Policy required Mr. Zarnetske and Director Reiner to thoroughly investigate any harassment claims they learned of. *Id.*

Sgt. Bronson does not explain what material harm flowed from South Kingstown's purported failure to investigate his claims. Based on the timeline of events, Mr. Zarnetske and Director Reiner were not aware of Sgt. Bronson's complaints until after: (1) the SKPD already completed its internal investigation into those complaints, and (2) Lt. Orton was placed on administrative leave pursuant to the investigation into the female dispatcher's complaints. Thus, it is unclear what harm arose from those Defendants' purported failure to investigate when SKPD already completed their own investigation into Sgt. Bronson's complaint, and he was not at risk of continued harassment from Lt. Orton due to the administrative leave. Accordingly, Sgt. Bronson fails to set forth sufficient facts for a reasonable jury to infer the Defendants' purported failure to adequately investigate constituted an adverse employment action.

Sgt. Bronson's RIWPA claims fail because he has not produced sufficient evidence to allow a reasonable jury to infer that he was subject to a materially adverse action in retaliation from his protected report of Lt. Orton's conduct. Accordingly, the Court GRANTS the Defendants' Motion for Summary Judgment on the RIWPA claims (Count I).

### 3. RICRA Claims

For Sgt. Bronson's RICRA claims, he purports that the factual allegations he asserted under his RIWPA claims suffices as grounds for him to recovery under

RICRA's anti-discrimination provisions.    ECF No. 28 at 15.    In sum, the discrimination that Sgt. Bronson alleges under his RIWPA claims is that he "was treated differently than his colleagues in retaliation for reporting [Lt. Orton's] misconduct . . .." *Id.* at 12. But RICRA proscribes discrimination based on race, color, religion, sex, disability, age, or country of ancestral origin. R.I. Gen. Laws § 42–112–1. Sgt. Bronson's RIWPA claims does not reveal any basis on which the Defendants *illegally* discriminated against him. As this Court has said before, "[m]erely asserting discrimination without articulating and supporting with evidence (even inferential), the *basis* for such discrimination—such as race, sex, and age—is not enough to make out a RICRA discrimination claim. *Doe v. Town of S. Kingstown*, No. 1:22-CV-441-JJM-LDA, 2025 WL 80518, at *4 (D.R.I. Jan. 13, 2025). Accordingly, Sgt. Bronson's RICRA discrimination claims fail as a matter of law.[8]

### 4.  NIED Claims

Next, Sgt. Bronson asserts an NIED claim against the Defendants.  Only two classes of persons may bring claims for NIED: those within the zone-of-danger who are physically endangered by the acts of a negligent defendant, and bystanders related to a victim who they witness being injured. *Shannahan v. Moreau*, 202 A.3d 217, 229 (R.I. 2019) (citing *Gross v. Pare,* 185 A.3d 1242, 1246 (R.I. 2018)). A plaintiff is within the zone-of-danger if they sustain a physical impact or are "placed in

---

[8] In his Opposition to Defendants Motion for Summary Judgment, Sgt. Bronson abandons the claim in his Complaint that the Defendants discriminated against him based on his disability, instead relying on his RIWPA claims to support an inference of a RICRA discrimination violation. *See* ECF No. 28 at 15-16.

immediate risk of physical harm" by a defendant's negligent conduct. *Sawyer Bros, Inc. v. Island Transporter, LLC*, 887 F.3d 23, 38 (1st Cir. 2018) (citing *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 548 (1994)). Plaintiffs within the zone-of-danger must also, because of experiencing the accident, suffer "serious emotional injury that is accompanied by physical symptomatology." *Perrotti v. Gonicberg*, 877 A.2d 631, 637 (R.I. 2005) (citing *Marchetti v. Parsons*, 638 A.2d 1047, 1052 (R.I. 1994)).

Here, Sgt. Bronson proceeds under the "zone-of-danger" theory. He argues that the Defendants played a role in placing him within the zone-of-danger because they knew that the purported harassment, discrimination, and retaliation he endured from Lt. Orton, Captain Bucco, and other SKPD members would result in severe emotion distress, yet "turn[ed] a blind eye to it, fail[ed] to properly investigate it, and . . . refused to believe [his] credible allegations." ECF No. 28 at 18. The conduct Sgt. Bronson purports as giving rise to his emotion distress was Lt. Orton pointing a firearm at him and both Lt. Orton and Captain Bucco's alleged "campaign to torture, harass, annoy, both and suppress Sgt. Bronson's law enforcement career." *Id.* Sgt. Bronson contends that the severe emotional distress he has suffered "has manifested into physical symptoms, including those consistent with panic attacks."

The Defendants argue that Mr. Zarnetske and Director Reiner are entitled to summary judgment on the NIED claim because Sgt. Bronson "cannot establish that he was in a zone of physical danger from any actions by them." ECF No. 24 at 12. The Defendants point to Sgt. Bronson's interrogatory answer—in which he explained his basis for his NIED claim—noting that nowhere in Sgt. Bronson's answer does he

allege any conduct by Mr. Zarnetske or Director Reiner. *Id.* Further, the Defendants asserts that even if Sgt. Bronson could establish a NIED claim against South Kingstown based on its agents' acts, such a tort claim is barred because—based on the Rhode Island Supreme Court's decision in *Kaya v. Partington*. They reason that *Kaya* established that IOD benefits are the "exclusive remedy for police officers injured in the line of duty with respect to their employers." *Id.* (citing *Kaya v. Partington*, 681 A.2d 256, 260 (R.I. 1996)). Thus, the Defendants assert that Sgt. Bronson's current receipt of IOD benefits—based on the PTSD and other conditions he incurred from work related stress—precludes him seeking a remedy for those same injuries under a NIED claim. *Id.* at 13.

As to Mr. Zarnetske and Director Reiner, it is true that Sgt. Bronson's allegations do not outline any conduct on their part that placed him in the zone of physical danger. Sgt. Bronson himself noted that these Defendants did not learn of his complaints against Lt. Orton until December 2019, at which point Lt. Orton was on administrative leave for other misconduct allegations. *See* ECF No. 28 at 13. Nor does he allege that he reported any alleged harassment from Capt. Bucco or other SKPD members as to put these Defendants on notice. Overall, Sgt. Bronson has not set forth sufficient evidence that could permit a factfinder to infer that either Mr. Zarnetske or Director Reiner knew or should have known of the purported harassment he endured from Lt. Orton. Instead, Sgt. Bronson's NIED claims implicate Capt. Bucco and SKPD's handling of his complaints against Lt. Orton.

Accordingly, the Court GRANTS Defendants Zarnetske and Reiner's Motion for Summary Judgment on the NIED claim (Count III).

Moving to Sgt. Bronson's NIED claim against South Kingstown, the Court must evaluate whether such a tort claim is barred considering Sgt. Bronson's current receipt of IOD benefits. The Rhode Island Supreme Court has held that "with respect to work-related personal-injury claims, the IOD statute provides the exclusive remedy for municipal police officers seeking redress from their municipal employers, fellow officers, supervisors, and other municipal officers." *Strynar v. Rahill*, 793 A.2d 206, 208 (R.I. 2002) (citing *Kaya v. Partington*, 681 A.2d 256, 260 (R.I.1996)). Accordingly, the Rhode Island Supreme Court has precluded tort claims where an officer has received IOD benefits for harm that their employers alleged tortious conduct caused. *See Kaya*, 681 A.2d at 260 (holding that an officer's IOD benefits were the exclusive remedy for work related injury allegedly caused by employer's negligence in preventing such an injury); *see also Strynar*, 793 A.2d at 208 (holding that officer's IOD benefits were exclusive remedy for work related injury—severe emotional distress—allegedly caused by employer's intentional misconduct).

While Sgt. Bronson disputes when he began receiving IOD benefits, there is no dispute that he is currently receiving IOD benefits for PTSD and other conditions he incurred purportedly because of the of the alleged harassment he endured while working at SKPD. *Compare* ECF No. 25 at 5 ¶ 28 *with* ECF No. 29 at 3 ¶ 28; *see also* ECF No. 28 at 17. The injury he asserts under his NIED claims against Defendants, in essence, is the same workplace injury for which he is receiving IOD benefits.

Accordingly, Sgt. Bronson's IOD benefits for his PTSD serve as the exclusive remedy for redressing South Kingstown and its agents' alleged negligence in causing such an injury. *See Kaya,* 681 A.2d at 260; *see also Strynar,* 793 A.2d at 208. The Court thus GRANTS Defendant South Kingstown's Motion for Summary Judgment on Sgt. Bronson's NIED claims (Count III).

### 5. Substantive Due Process Claims

Lastly, Sgt. Bronson asserts a substantive due process claim, under 42 U.S.C. § 1983, against the Defendants. To set forth a valid substantive due process claim, a plaintiff must prove that "they suffered the deprivation of an established life, liberty, or property interest, *and* that such deprivation occurred through governmental action that shocks the conscience." *Clark v. Boscher,* 514 F.3d 107, 112 (1st Cir. 2008) (citing *Pagán v. Calderón,* 448 F.3d 16, 32 (1st Cir.2006)). "Executive acts that shock the conscience must be truly outrageous, uncivilized, and intolerable and the requisite arbitrariness and caprice must be stunning, evidencing more than humdrum legal error." *Harron v. Town of Franklin,* 660 F.3d 531, 536 (1st Cir. 2011) (citations and quotations omitted). Further, the "hallmark of successful challenges is an extreme lack of proportionality, as the test is primarily concerned with violations of personal rights so severe[,] so disproportionate to the need presented, and so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." *Id.* (quoting *González–Fuentes v. Molina,* 607 F.3d 864, 881 (1st Cir. 2010)).

Here, Sgt. Bronson contends that the "egregiously unacceptable" and arbitrary way South Kingstown and SKPD carried out and enforced its policies and regulations deprived him of his substantive due-process rights. ECF No. 28 at 20. He asserts that after he reported Lt. Orton, he was: (1) wrongfully denied promotions; (2) wrongfully denied IOD benefits for over a year, and (3) subjected to harassment, assault, and disparagement from his supervisors. *Id.* He next contends that the Defendants: (1) failed to adequately investigate his formal report against Lt. Orton; (2) allowed Lt. Orton to return from administrative leave without further disciplinary action despite recommendations from an officer to fire or demote him; and (3) wrongfully allowed Lt. Orton to resign before completing investigation into another harassment complaint against him, which allowed him to retire with full benefits. *Id.* at 20-21. Sgt. Bronson asserts that the Defendants approach to handling Lt. Orton's conduct amounted to "a gross abuse of governmental power" and was "egregiously unacceptable," which he contends is made worse because the Defendants purportedly never missed an opportunity to discipline him or to deny him contractually owed benefits. *Id.* at 20, 21. Lastly, Sgt. Bronson alludes that Capt. Bucco wrongfully informed Lt. Orton about the January 2019 verbal report against him, suggesting that this instigated Lt. Orton into aiming a firearm at Sgt. Bronson. *Id.* at 20.

For his substantive due process claims against South Kingstown, his theory of municipality liability "cannot be based on respondeat superior." *Abdisamad v. City of Lewiston,* 960 F.3d 56, 60 (1st Cir. 2020) (quoting *Dirrane v. Brookline Police Dep't,* 315 F.3d 65, 71 (1st Cir. 2002)). Rather, "liability can be imposed on a local

government only where that government's policy or custom is responsible for causing the constitutional violation or injury" *Id.* (quoting *Kelley v. LaForce*, 288 F.3d 1, 6 (1st Cir. 2002)).  As the Defendants point out, Sgt. Bronson has not pointed to any policy or custom of South Kingstown that has caused any constitutional injury.  Thus, he fails to set forth a valid substantive due process claim against South Kingstown. Accordingly, the Court GRANTS Defendants South Kingstown's Motion for Summary Judgment on Sgt. Bronson's substantive due process claim (Count IV).

What's left is Sgt. Bronson's substantive due process claims against Mr. Zarnetske and Director Reiner.  He asserts that Mr. Zarnetske and Director Reiner failed to investigate all the matters in his July 2019 report against Lt. Orton, and ultimately allowed him to resign "mid-investigation so he would retire a lieutenant with his pension and full benefit."  ECF No. 28 at 20, 21.  Even viewing the evidence in a light most favorable to Sgt. Bronson, none of Mr. Zarnetske and Director Reiner's conduct rises to the level of conscience-shocking behavior.  It may have been frustrating or disappointing to Sgt. Bronson that Mr. Zarnetske and Director Reiner did not perform their own independent investigation into his claims.  And it is also understandable that Sgt. Bronson feels unvindicated when these Defendants accepted Lt. Orton's voluntary resignation amid a second misconduct investigation. But these decisions were at most "merely careless"—*not* "outrageous, uncivilized, and intolerable" as to shock the conscience.  *Harron*, 660 F.3d at 536.  Accordingly, Sgt. Bronson's substantive due process claims against Mr. Zarnetske and Director Reiner fail as a matter of law.  Thus, the Court GRANTS Defendants Zarnetske and Reiner's

Motion for Summary Judgment on Sgt. Bronson's substantive due process claims (Count IV).

## IV.     CONCLUSION

For the reasons stated above, this Court GRANTS the Defendants' Motion for Summary Judgment (ECF No. 23) on all counts (Counts I-IV).

IT IS SO ORDERED

John J. McConnell, Jr.
Chief Judge
United States District Court

February 5, 2025